

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 29, 1972

Hon. Ted Butler
District Attorney
Bexar County Courthouse
San Antonio, Texas 78204

Opinion No. M-1291

Re: Interpretation of subsection
(c) of Section 52 of
Article III, Constitution
of Texas, and related
questions.

Dear Mr. Butler:

In your recent request for an opinion you have asked the following questions which we will answer in the order presented.

1. "Pursuant to the provisions of and for the purposes stated in subsection (c) of Article 3, Section 52, Constitution of the State of Texas, (adopted at an election held on November 3, 1970), the Commissioners Court of Bexar County desires to call a county-wide election for the issuance of approximately twenty million dollars of road bonds, accordingly, is the Commissioners Court authorized to call such election on its own motion, or must it first have submitted to it a petition meeting the requirements of Article 752b, as amended?"

2. "In ordering and giving notice of the road bond election mentioned in Question No. 1, which statutes control - Does Article 704 apply, or do Articles 752f and 752f-2 apply?"

3. "There being four existing Road Districts in the County having outstanding bonded indebtedness, does Article 767a absolutely require the Commissioners' Court to include in the road bond proposition to be submitted, an additional amount to fully and fairly compensate the existing Road Districts for the amount of each District's outstanding road bonds, or may the Commissioners' Court call and hold the election on the question of the issuance of the new road bonds and if successfully voted, issue the bonds without compensating the existing Road Districts in the amount of such outstanding bonded indebtedness?"

-6328-

In answering your question concerning the authority of a Commissioner's Court, on its own motion, to call a county-wide election for the issuance of road bonds we must first examine the state of the law as it existed immediately prior to November 3, 1970, the date Article III, Section 52 of the Texas Constitution was last amended. Article III, Section 52, Subsection (b) as it now exists, is a complete re-enactment; its relevant part reads:

"Under Legislative provision, any county. . . upon a vote of two-thirds majority of the resident property taxpayers voting thereon. . .in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such (county). . .and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:

(1) . . .
(2) . . .
(3) The construction, maintenance and operation of macadamized, graveled or paved roads and turn-pikes, or in aid thereof." (Emphasis added.)

The legislation implementing and giving effect to this quoted constitutional provision was already contained within Chapter 3, Title 22, Vernon's Civil Statutes, as manifested in Article 752a of that Chapter which reads:

". . .Such bonds shall be issued in the manner hereinafter provided, and as contemplated and authorized by Section 52 of Article 3, of the Constitution of this State. . ."

As indicated in your first question, the provisions of Article 752b, as amended in 1969, contains certain procedural requirements which must be met prior to a county road bond election being called, among which are:

"Upon the petition of the resident property taxpaying voters of any county. . .the commissioners

> court of such county. . .shall order an election
> to be held. . ."

It is important to note the status of the law prior to any
Constitutional amendment for it is a long and well established
rule that a constitution is adopted with reference to exist-
ing laws and does not abrogate or change such laws unless
they are inconsistent with the constitutional provision or
unless specifically so changed. Collins v. Tracy, 36 Texas
546 (1872); 12 Tex. Jur. 2d 359, Const. Law, Sec. 9. It is
also a rule of constitutional construction that a constitu-
tional amendment is to be considered from its four corners
and in the light of the history out of which it grew, as
well as the purpose sought to be accomplished. Houchins v.
Plainos, 130 Tex. 413, 110 SW2d 549, 554 (1937).

The provisions of Article III, Section 52, Subsection
(c), as added by the 1970 amendment, must then be read in
pari materia with the other provisions of Article III,
Section 52 as well as with those legislative enactments
dealing with the same subject matter.

Article III, Section 52, Subsection (c) as amended in 1970
reads as follows:

> "Notwithstanding the provisions of Subsection
> (b) of this Section, bonds may be issued by any
> county in an amount not to exceed one-fourth of the
> assessed valuation of the real property in the
> county, for the construction, maintenance and
> operation of macadamized, graveled, or paved roads
> and turnpikes, or in aid thereof, upon a vote of
> a majority of the resident property taxpayers. . .
> and without the necessity of further or amendatory
> legislation. The county may levy and collect taxes
> to pay the interest on the bonds as it becomes due
> and to provide a sinking fund for redemption of
> the bonds. (Emphasis added.)

Our opinion is this provision was intended to eliminate
the requirement of a two-thirds majority vote in county road
bond elections which was requ'red by Subsection (b) of this
Section 52. That portion of Subsection (c) wherein it states
it is to be considered "Notwithstanding the provisions of
Subsection (b). . ." was made a part of the amendment so as

to avoid any conflict which would exist between these two subsections with regard to the vote requirement. It was not intended as a complete disclaimer of Subsection (b) because the two subsections must be considered together in order to arrive at a proper construction of either.

> "Generally, rules of construction applicable to statutes apply in the construction of constitutional provisions." 12 Tex. Jur. 2d 362, Const. Law Sec. 14.

> "In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.
> The purpose of the in pari materia rule of construction is to carry out the full legislative intent, by giving effect to all laws and provisions bearing on the same subject. The rule proceeds on the supposition that several statutes relating to one subject are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions. . ." (53 Tex. Jur. 2d 281, 284, Statutes, Sec. 186)

It is also important to note that the amendment to Article III, Section 52, as proposed by the legislature (H.J.R., No. 28, 61st Leg. R.S., 1969, page 3236) was done so with the knowledge of those procedural requirements contained in Article 752b as well as Article 752f and Article 752f-2 as referred to in your second question. The legislature in drafting the proposed amendment which was to become subsection (c) and which would allow counties to issue road bonds upon a majority vote, also provided that it was to be accomplished "without the necessity of further or amendatory legislation." This was a restatement on the part of the legislature that new legislation was not necessary for the implementation of the amendment nor was it necessary to amend any existing legislation dealing with the subject.

The requirements of a petition prior to calling a road bond election in counties as required by Article 752b has long been a legislative requirement and it is important to note that the 61st Legislature, in addition to proposing the amendment to Section 52 also in the same Regular Session (Acts 1969, 61st Leg. R.S., page 1654, Ch. 518) amended Article 752b so as to increase the petition requirements from "fifty resident property taxpaying voters" to "one percent or more of the total votes cast in said county in the last preceding general election for Governor. . .", being an obvious act on their part to strengthen this requirement. It was certainly not the intention of the legislature to do away with the requirement for a petition and this intent must be weighed in any constitutional construction. Kaufman County Levee Imp. Dist. No. 10 v. National Life Ins. Co., 171 SW2d 188 (Tex. Civ. App., 1943, error ref.).

In answer to your second question, in ordering any such road bond election and its necessary notice, the provisions of Article 752f and 752f-2 should be followed, as well as those provisions of Article 752b dealing with the necessary contents of any such election order and notice. Article 704 is not applicable.

In your third question you have asked if it is mandatory that the Commissioners Court include in the road bond proposition an additional amount sufficient to compensate the various road districts in Bexar County in an amount equal in value to the amount of bonds outstanding against their road districts at the time the new county bonds are issued.

The matter of compensating road districts in accordance with the provisions of Article 767a is permissive and one which must be initiated by a petition of the property taxpaying voters of the county. Article 767a, in its relevant portion reads:

"Whenever in any political subdivision or road district in any county bonds have been issued under the authority of any general or special law enacted pursuant to Section 52, of Article 3, of the Constitution, and thereafter bonds are voted by the entire county for the purposes hereinafter authorized, such political subdivisions or road

districts first issuing bonds may be fully and
fairly compensated by the county in an amount
equal in value to the amount of district bonds
issued by such districts, and which shall be
done in the form and manner hereinafter prescribed:
(1) It shall be the duty of the Commissioners'
Court, upon the presentation of a petition signed
by two hundred and fifty resident property tax-
paying voters of the county, . . .to order an
election under the provisions of this Act to deter-
mine whether or not the bonds of such county shall
be issued for road construction purposes as auth-
orized by subdivisions 3 and 4 of this section."
(Emphasis added.)

## S U M M A R Y

Subsection (c) of Article III, Section 52 of
the Texas Constitution must be read in pari materia
with the other provisions of Section 52 of Article
III as well as those statutes comprising Chapter 3,
Title 22, Vernon's Civil Statutes (Art. 752a- 784b).

The provisions of Articles 752b, 752f and
752f-2 must be looked to for the procedural require-
ments in the conduct of county road bond elections
held pursuant to Article III, Section 52, Subsection
(c) of the Texas Constitution.

Article 767a is a permissive statute the pro-
visions of which can be invoked only upon petition.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Robert B. Davis
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hon. Ted Butler, page 7, (M- 1291)


W. E. Allen, Chairman

Max Hamilton
Robert L. Lemens
Marvin F. Sentell
James Hackney

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant